COPY

RECEIVED APR 0 2 2001

# LABOR AGREEMENT

## SAN FRANCISCO, EAST BAY AND VICINITY

## MASTER COMMERCIAL AGREEMENT

May 1, 2000 to April 30, 2004

Wage Scale and Agreement

between

**GEERTZ PRINTING**

and

**GRAPHIC COMMUNICATIONS UNION
DISTRICT COUNCIL NO. 2**

# AGREEMENT

**SECTION 1.**  **INTRODUCTION**

1.1  This Agreement is made and entered into by and between **Geertz Printing**, hereinafter referred to as the "Employer" and the **Graphic Communications Union, District Council No. 2**, hereinafter referred to as the "Union".

WHEREAS, the parties hereto are desirous of promoting and maintaining harmonious relations and of assuring industrial peace.

NOW THEREFORE, it is mutually agreed as follows:


**SECTION 2.**  **LIFE OF AGREEMENT**

2.1  This Agreement shall be effective May 1, 2000 and shall be subject to sixty (60) days notice by either party prior to April 30, 2004, or any date thereafter, of a desire to negotiate changes in this Agreement.


**SECTION 3.**  **JURISDICTION**

3.1  It is understood that this Agreement applies to the pressrooms and related departments operated by the Employer, or classification described hereinafter, including, but not limited to gravure, offset and letterpress printing presses, take off and preparation for delivery, all preparatory, including, but not limited to camera operation, darkroom work, assembly of negatives and positives, opaquing, platemaking, gravure cylinder making, and any other method or process that results in a completed product ready for printing presses.

3.2  Nothing in this Agreement shall apply to (a) existing operations of the Employer which are manned under a Collective Bargaining Agreement with any other Labor Union as long as such other Collective Bargaining Agreement or renewal thereof continues in effect; (b) any work now being performed by any department of the Employer other than the above; or (c) any material that is now furnished to the Employer from outside sources.


**SECTION 4.**  **PAYROLL DEDUCTION OF UNION DUES AND INITIATION FEES**

The Employer agrees to deduct the regular monthly Union dues from the earnings of each employee from whom a written authorization is received by the Employer, on a payroll period basis. Such authorization shall be irrevocable for the period of one (1) year from the date of delivery thereof to the Employer or until the termination of the Collective Bargaining Agreement between the Employer and the Union as in force at the time of delivery of the authorization, whichever occurs sooner, and such authorization shall be automatically renewed and shall be irrevocable for successive periods of one (1) year each or for the period of each successive applicable Collective Bargaining Agreement between the

the Employer so as to comply with the code.

**SECTION 35.**      **HEALTH AND WELFARE**

35.1        The Employer and the Union hereby accept, ratify and become bound by the terms of that certain Agreement and Declaration of Trust dated October 2nd, 1952, as amended, establishing the Printing Specialties and Paper Products Joint Employer and Union Health and Welfare Fund the same as though they were signatory thereto.

35.2        Medical, Dental, Vision and Prescription Drug Plans: Effective with the May 1997 payment on April 1997 hours, the Employer will contribute monthly to the Printing Specialties and Paper Products Joint Employer and Union Health and Welfare Fund up to the below-listed amounts required by the trust for each eligible Employee (and his or her dependents) working or paid for eighty (80) hours or more per month. All payment changes shall be effective on July of each year covering June hours in that year.

| Effective date: | May 1, 2000 | $364.22 |
| Effective date: | July 1, 2000 | 390.26 |
| Effective date: | July 1, 2001 | 450.06 |
| Effective date: | July 1, 2002 | 515.39 |
| Effective date: | July 1, 2003 | 552.90 |

**SECTION 36.**      **SANITATION AND HEALTH**

36.1        The Employer agrees to furnish a clean, healthful, sufficiently ventilated, properly heated, and lighted place for the performance of all work, and all machines or apparatus from which dust, gases, or other impurities are produced or generated shall be equipped in such a manner as to protect the health of the employees.

36.2        Safety devices, where provided, must be used and safety rules established by the Employer must be observed at all times.

36.3        Safety and sanitation shall, however, be in accordance with the rules established by governmental codes.

36.4        Employees shall assume their fair share of the responsibility in maintaining clean and sanitary conditions; this, however, shall not require employees to perform janitorial work.

**SECTION 37.**      **PAY DAY**

37.1        A pay day shall be established and maintained in all shops of the Employers.

37.2        On such day, all wages which are earned and unpaid at the close of the Sunday preceding the weekly pay day, shall be paid before noon provided, that when an employee is discharged, all

## SECTION 49.   MANNING AND WAGES

49.1   In the event there is a reduction in press manning as per this Agreement, the Employer agrees that any employee affected by any such reduction shall not be laid off or terminated.

49.2   The foreperson shall determine the manning as per this Agreement and will reassign employees to another job under the jurisdiction of the Union. Reassigned employees shall retain at least the rate of pay for his classification in effect at the time of displacement, plus any subsequent increase in pay in his classification.

49.3   If a reassigned employee leaves the job of his own accord, or is promoted, or transfers of his own accord, the vacancy need not be filled.

49.4   Adequate floor help shall be assigned by the foreman as needed and shall be personnel other than the press complement required by this Agreement.

49.5   Floor help shall be an assistant or assistant in training, and shall be paid the appropriate rate.

49.6   When the Employer uses the asterisk manning option, then the term "adequate floor help" in paragraph 49.5 shall include help to make up loads, move stock, and move supplies.

## SECTION 50.   COMPLETE AGREEMENT

IN WITNESS WHEREOF, and in full attest of ratification by the Employers and the Union, parties hereto, the undersigned, representing respectively, such Employers and the Union, have hereunto as representatives, signed their names, attested by representatives of each respective organization, the day and year herein first above written.

Geertz Printing:

_____
Steve Rogers
President

Graphic Communications Unions
District Council No. 2:

_____
Tony Cofrell
General Representative

3-28-01
Date

7-8-00
Date